## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**SHIRLEY Y.,**[1]

        **Plaintiff,**

                             **Case No. 3:22-cv-5141**

    **v.**                          **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Shirley Y. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On May 12, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since July 4, 2000. R. 114, 126, 148–49. The application was denied initially and upon reconsideration. R. 131–35, 139–41. Plaintiff sought a *de novo* hearing before an administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

law judge ("ALJ"). R. 143–44. ALJ Gerard Langan held a hearing on February 12, 2019, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 37–71. In a decision dated May 15, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 4, 2000, Plaintiff's alleged disability onset date, through December 31, 2005, the date on which Plaintiff was last insured. R. 15–25 ("the 2019 decision"). That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 24, 2020. R. 1–6. Plaintiff timely filed an appeal in this Court pursuant to 42 U.S.C. § 405(g). R. 5386, 5389. On April 5, 2021, United States District Judge Freda L. Wolfson granted the Commissioner's uncontested motion to remand the action for further administrative proceedings. R. 5381–86.

On remand, the Appeals Council vacated the 2019 decision and remanded the case to the ALJ for further proceedings and specifically for resolution of the following issues:

- The ALJ did not address a treating source opinion from Daryl Kim, M.D., who opined that the claimant can sit, stand, and walk less than 2 hours in an 8-hour workday, requires the ability to walk every 30 minutes for 10 minutes at a time, will be off-task 25% of a workday, is incapable of even low-stress work, and will miss 3 days of work monthly. Although Dr. Kim issued his decision on January 29, 2019, well after the claimant's December 31, 2015 date last insured, Dr. Kim explicitly related his opinion back to the period at issue, indicating that the claimant's limitations began as early as 2000 (Exhibit 62F, page 5). However, the ALJ did not address or evaluate the persuasiveness of this opinion to determine whether it was relevant to the period at issue and supported by substantial evidence. Accordingly, further consideration of this opinion evidence is warranted.

Upon remand the ALJ will:

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the medical source opinion of Daryl Kim, M.D. pursuant to the provisions of 20 CFR 404.1520c.

2

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The ALJ will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the ALJ will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the ALJ will take any further action needed to complete the administrative record and issue a new decision.

R. 5389–90. The ALJ held a hearing on August 12, 2021, at which Plaintiff, who was again represented by counsel, testified, as did a medical expert and a vocational expert. R. 5300–50. In a decision dated October 8, 2021, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 4, 2000, Plaintiff's alleged disability onset date, through December 31, 2005, the date on which Plaintiff was last insured. R. 5271–87. That decision became final when the Appeals Council found no reason to assume jurisdiction on July 20, 2022. R. 5259–67. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On October 2, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 18.[3] On October 3, 2023, the case was reassigned to the undersigned. ECF No. 19. The matter is ripe for disposition.

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

4

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

6

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   THE 2021 DECISION AND APPELLATE ISSUES

Plaintiff was 33 years old on December 31, 2005, *i.e.,* the date on which she was last insured. R. 5274, 5286. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 4, 2000, her alleged disability onset date, and the December 31, 2005, date last insured. R. 5274.

At step two, the ALJ found that, through the date last insured, Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; pancreatitis insufficiency; chronic intestinal pseudo obstruction; and intestinal malabsorption. *Id.*  The ALJ also found that Plaintiff's medically determinable impairment of anxiety was not severe. R. 5274–75.

At step three, the ALJ found that, through the date last insured, Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 5275–77.

At step four, the ALJ found that, through the date last insured, Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 5277–86. The ALJ also

found that this RFC did not permit the performance of Plaintiff's past relevant work as a cosmetologist/manicurist. R. 5285–86.

At step five and relying on the testimony of the vocational expert, the ALJ found that, through the date last insured,  a significant number of jobs—*e.g.*, jobs as an order clerk, a document preparer, and a semi-conductor bonder—existed in the national economy and could be performed by Plaintiff. R. 5286–87. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 4, 2000, her alleged disability onset date, through December 31, 2005, the date on which she was last insured. R. 5287.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 11. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.   Daryl Kim, M.D.

On August 1, 2017, Daryl Kim, M.D., Plaintiff's treating internist, completed a three-page, check-the-box, and fill-in-the-blank form entitled, "General Medical Report." R. 2827–30 ("Dr. Kim's 2017 opinion"). Dr. Kim first examined Plaintiff in 2012, and treated her "as needed," most recently on July 10, 2017. R. 2828. Plaintiff's history was summarized as chronic weight loss, gastrointestinal problems, anorexia, and chronic pain. *Id*. Dr. Kim's findings included "cachexia, thin, general decreased muscle tone[.]" *Id*. Dr. Kim diagnosed "poor weight gain, chronic pain d/o, short gut syndrome, intestinal malabsorption, immunodeficiency[.]" R.

2829. Asked to identify Plaintiff's treatment and response, Dr. Kim responded, "picc [peripherally inserted central catheter] line GI specialist[.]" *Id*. According to Dr. Kim, Plaintiff was limited to lifting and carrying 5 pounds, standing and/or walking less than 2 hours per day, and sitting less than 6 hours per day. *Id*. Plaintiff was limited in her ability to push and/or pull (including hand and foot controls), but Dr. Kim failed to specify those limitations. *Id*. Plaintiff's "weakness, weight loss, and chronic pain" also limit her ability to engage in work activities. *Id*.

On January 29, 2019, Dr. Kim completed a four-page, check-the-box, and fill-in-the-blank form entitled, "Physical Medical Source Statement." R. 3685–88 ("Dr. Kim's 2019 opinion"). Dr. Kim treats Plaintiff 1 to 3 times a year. R. 3685. He diagnosed intestinal malabsorption, pseudo obstruction intestine, and pancreatic insufficiency; her prognosis was poor. *Id*. Dr. Kim identified Plaintiff's symptoms as pain, fatigue, weakness, and weight changes. *Id*. Asked to characterize Plaintiff's pain, Dr. Kim responded as follows: "diffuse abdominal pain, daily, severe. No known precipitating factors." *Id*. He identified the following clinical findings: "abdominal tenderness – Multiple studies and evaluations with specialists." *Id*. Asked to describe Plaintiff's treatment and response, including side effects, Dr. Kim responded: "picc line/TPN [total parenteral nutrition]." *Id*. According to Dr. Kim, Plaintiff's impairments had lasted or were expected to last at least twelve months. *Id*. He also indicated that insomnia affected Plaintiff's physical condition. *Id*. When asked to estimate Plaintiff's functional limitations if placed in a competitive work situation, Dr. Kim opined that Plaintiff could walk 1 city block without rest or severe pain; could sit for 30 minutes at a time and could stand for 30 minutes at a time; and could stand/walk for a total of less than 2 hours in an eight-hour working day. R. 3685–86. Plaintiff needed a job that permits shifting positions at will for sitting, standing, walking and she needed to walk for 5 to 30 minutes every 30 minutes several times a day

10

because of her muscle weakness, chronic fatigue, and pain/paresthesias, and numbness. R. 3686. Plaintiff did not need to elevate her legs with prolonged sitting, nor did she need to use a cane or other hand-held assistive device while engaging in occasional standing/walking. *Id.* Dr. Kim opined that Plaintiff could occasionally (meaning 6% to 33% of an 8-hour working day) lift and carry less than 10 pounds; could occasionally climb stairs, but could rarely (meaning 1% to 5% of an 8-hour working day) twist, stoop (bend), crouch/squat, or climb ladders. R. 3687. He denied that Plaintiff had significant limitations with reaching, handling, or fingering. *Id.* Dr. Kim also opined that Plaintiff was likely to be off task 35% or more of a typical workday, was incapable of handling even "low stress" work; her impairments were likely to produce "good days" and "bad days" and she was likely to be absent from work because of her impairments about three days per month. R. 3687–88. According to Dr. Kim, Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. R. 3688. Dr. Kim answered in the affirmative to the following question: "Ms. Y[.] indicates that her symptoms/limitations began as early as 2000. Would you opine, based upon your treatment that claimant's diagnosis and/or symptoms and/or limitations would have begun as early as 2000?" *Id.*

      **B.**     **Elaine Hardy, M.S., R.N., A.P.N.**

On May 19, 2017, Elaine Hardy, M.S., R.N., A.P.N., completed a two-page, check-the-box, and fill-in-the-blank form entitled, "General Medical Report." R. 2313–14 ("Nurse Hardy's 2017 opinion").[4] Nurse Hardy indicated that she had first examined Plaintiff in 2006, and had

---

[4] The Court notes that this report is unsigned. R. 2313–14. However, the parties agree that Nurse Hardy completed this evaluation and, therefore, the Court will treat it as such under the facts of this case. *Cf. Hardy v. Comm'r of Soc. Sec.*, No. CV 18-12813, 2019 WL 3812450, at *2–3 (D.N.J. Aug. 14, 2019) (remanding action where the ALJ discounted a medical report that

treated her "Q6-12 mos[,]" most recently on April 12, 2017. R. 2313. Nurse Hardy noted
Plaintiff's history of chronic diarrhea and "CVIDS" and identified the following physical
findings: cachexic, thin, frail, pale, and bloated belly. *Id*. Nurse Hardy left blank questions asking
for the results and dates of all pertinent laboratory and special studies and diagnoses. R. 2313–
14. Asked to identify Plaintiff's treatment and responses, Nurse Hardy responded, "Sees
metabolic MD for IV infusions – nutrition[.]" R. 2314. Nurse Hardy opined that Plaintiff could
lift and carry 3 pounds; cold stand and/or walk less than 2 hours per day; and could sit up to 6
hours per day. *Id*. Plaintiff was "Limited" in her ability to push and/or pull and in other ways, but
Nurse Hardy failed to describe such limitations. *Id*. When asked whether there are any other
conditions that limit Plaintiff's ability to do work-related activities, Nurse Hardy responded as
follows: "Pt has IV's for nutrition[.] Weak, thin frail. This chronic condition will not go away[.]
Needs long term [illegible] care[.]" *Id*.

On February 7, 2019, Nurse Hardy completed a four-page, check-the-box, and fill-in-the-
blank form entitled, "Physical Medical Source Statement." R. 4427–30 ("Nurse Hardy's 2019
opinion"). Nurse Hardy treated Plaintiff one to two times a year. R. 4427. She diagnosed
gastroparesis, weight loss, short bowel syndrome, IgA (Immunoglobulin A) deficiency,
abdominal pain, and constipation and stated that plaintiff suffered from the following symptoms:
pain, fatigue, weight loss, and constipation. *Id*. Plaintiff's prognosis was poor. *Id*. When asked to
characterize Plaintiff's pain, Nurse Hardy responded: "Abdominal. All day, is on opiods [sic] for
pain." *Id*. According to Nurse Hardy, Plaintiff's clinical findings and objective signs were
"underweight, unable to eat orally on IV nutrition." *Id*. When asked to describe Plaintiff's

---

contained a signature that he believed was illegible, but that "it is clear that it was a report
written by treating physician Dr. Kempf").

treatment and response, including any side effects from medication, Nurse Hardy circled the words "drowsiness," "dizziness," and "nausea," and wrote "constipation, fatigue, need for naps." *Id*. Plaintiff's impairments had lasted or were expected to last at least twelve months. *Id*. When asked whether emotional factors contributed to severity of Plaintiff's symptoms/functional limits and to identify any psychological conditions affecting Plaintiff's physical conditions, Nurse Hardy responded: "her medical issues cause her to feel depressed and anxious." *Id*. When asked to estimate Plaintiff's functional limitations if she were placed in a competitive work situation, Nurse Hardy opined that Plaintiff could not walk any city blocks without rest or severe pain; could sit up to 15 minutes at one time before needing to get up; could stand for 5 minutes at one time before needing to sit down or walk around; could stand/walk less than 2 hours in an 8-hour working day with the handwritten notation, "unable to work while hooked up to her nutrition IV!"; responded "N/A" when asked about needing a job that permits shifting positions from sitting, standing, walking; responded "often too drowsy from meds" when asked about needing periods of walking around during an 8-hour working day. R. 4427–28. Nurse Hardy denied that Plaintiff would sometimes need to take unscheduled breaks during the working day, yet she answered follow-up questions as if she had answered in the affirmative, responding "Forever" when asked how often this will happen; that each break should last 1-2 hours; and that she "needs nap" because of her "muscle weakness, chronic fatigue, and pain/paresthesia, numbness." R. 4428. Nurse Hardy denied that Plaintiff needed to elevate her legs with prolonged sitting and denied that Plaintiff must use a cane or other hand-held assistive device when engaged in occasional standing/walking. *Id*. According to Nurse Hardy, Plaintiff could lift and carry less than 10 pounds, although the nurse did not indicate how often Plaintiff could do this, handwriting that Plaintiff "only weighs 88-100 lbs." R. 4429. Nurse Hardy also opined that

13

Plaintiff could rarely (meaning 1% to 5% of an 8-hour working day) twist, stoop (bend), crouch/squat, climb stairs, and climb ladders; that she could use her hands/fingers/arms 10% of an 8-hour working day to grasp, turn, twist objects, for fine manipulations, for reaching in front of her body, and for reaching overhead. *Id.* Plaintiff was likely to be off task 25% or more of the time and was incapable of even low stress work because of her "significant pain, wt. loss, poor overall nutritional status[.]" R. 4429–30. Nurse Hardy further opined that Plaintiff's impairments were likely to produce "good days" and "bad days" and that Plaintiff was likely to be absent more than four days per month as a result of her impairments. R. 4430. Nurse Hardy answered in the affirmative when asked if Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation and whether Plaintiff was credible. *Id.* Nurse Hardy also answered in the affirmative the following question: "Ms. Y[.] indicates that her symptoms/limitations began as early as 2000. Would you opine, based upon your treatment that claimant's diagnosis and/or symptoms and/or limitations would have begun as early as 2000?" *Id.*

### C.    Michael Rothkopf, M.D.

On January 14, 2019, Michael Rothkopf, M.D., completed a six-page, check-the-box, and fill-in-the-blank form entitled, "Weight Loss-Malnutrition Treating Physician Data Sheet." R. 3448–53. Dr. Rothkopf denied that Plaintiff had anorexia nervosa, bulimia, or other mental disorder, and stated that she suffers from malabsorption syndrome, which causes weight loss due to an inability to absorb calories. R. 3449. Dr. Rothkopf noted that Plaintiff receives total parenteral nutrition ("TPN")—with a central venous line—daily and that she is compliant with that treatment. 3449–50. Plaintiff has not undergone GI surgery and does not abuse alcohol or other drugs. *Id.* Dr. Rothkopf denied that Plaintiff has hypoalbuminemia, currently anemic,

hypocalcemia, uncontrolled diabetes due to pancreatic dysfunction, or persistent or recurrent ascites or edema attributable to a GI disorder. R. 3450–51. Dr. Rothkopf was unsure if a 24-hr stool fat had been measured, but reported a fat-soluble vitamin, mineral, or trace mineral deficiency according to test results dated August 2, 2018. R. 3451. Asked about Plaintiff's "*Current* Functional Limitations[,]" Dr. Rothkopf denied that Plaintiff had the strength or stamina to stand and/or walk for 6 to 8 hours per day on a long-term basis, but he stated that it was "unknown" how long Plaintiff could stand/walk in a work day. R. 3451–52 (emphasis in the original). He opined that Plaintiff could frequently (meaning "cumulatively not continuously") lift and carry less than 10 pounds. R. 3452. "Pt has a long history of malabsorption & malnutrition. She is dependent on TPN." R. 3453.

## V.   DISCUSSION

### A.   Opinion Evidence

Plaintiff challenges the ALJ's consideration of the medical opinions of Drs. Kim and Rothkopf, and of Nurse Hardy. *Plaintiff's Brief*, ECF No. 11, pp. 4–10. For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant

treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[5] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and

---

[5] As previously noted, Plaintiff's claim was filed on May 12, 2017.

supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.")

At step four of the sequential evaluation process, the ALJ found that Plaintiff, through the date on which she was last insured, had the RFC to perform a limited range of sedentary work as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant should avoid unprotected heights. She should avoid climbing ladders and scaffolds, but she can

occasionally climb ramps and stairs. The claimant could tolerate occasional exposure to extreme cold temperatures, wetness, and vibration. She could occasionally bend and twist at the waist. The claimant required the ability to alternate between sitting and standing every thirty minutes.

R. 5277 (emphasis in the original). In reaching this determination, the ALJ found, *inter alia*, several medical opinions to be unpersuasive. R. 5277–85. The Court addresses in turn Plaintiff's challenges to the ALJ's consideration of the opinions of Dr. Kim, Nurse Hardy, and Dr. Rothkopf.

### 1.    Daryl Kim, M.D.

The ALJ found Dr. Kim's 2017 and 2019 opinions unpersuasive, reasoning as follows:

Daryl Kim, M.D. completed a medical source statement on January 29, 2019. Dr. Kim found the claimant can stand and/or walk less than 2 hours in an 8-hour workday. She can sit less than 2 hours in an 8-hour workday. She can lift and carry less than 10 pounds. The claimant can occasionally climb stairs. She can rarely twist, stoop, crouch and/or squat and climb ladders and scaffolds. The claimant would be off task 25% or more of a workday and she would be absent three days per month (Exhibit 62F). The undersigned Administrative Law Judge finds Dr. Kim's opinions on the medical source statement unpersuasive since the opinion was provided in 2019 and is not supportable during the relevant period. Dr. Kim's opinion is inconsistent with the claimant's testimony that from the alleged onset date to her date last insured she was able to lift and carry 15 pounds. She testified that she was able to stand 45 minutes at one time. She admitted that she could walk 15 minutes at a time during that time. Sitting was worse due to back pain. She was able to lift and carry 15 pounds comfortable and consistently. She had no difficulty bending or twisting at the waist (Hearing Testimony). Dr. Kim's opinion was based on the claimant's subjective statement because he reported that "Ms. Y[.]indicates that her symptoms/limitations began as early as 2000" (Exhibit 62F/5). Furthermore, an examination by Infanta A. Stephen, M.D., a Board Certified Neurologist, examined the claimant on December 20, 2019 and found she had good strength in all four extremities. Her sensory examination of both the upper and lower extremities was intact and symmetrical. Her gait was unremarkable. Her cardiac rhythm was regular and her lungs were clear (Exhibit 80F/11).

Dr. Kim provided a medical source statement on August 1, 2017 (after lapse of the date last insured) and opined that the claimant is limited to lifting and carrying 5 pounds. She can stand and walk less than 2 hours in an 8-hour workday, and she can sit less than 6 hours in an 8-hour workday. She is limited in pushing and pulling (Exhibit 45F). The undersigned Administrative Law Judge finds this opinion

unpersuasive because Dr. Kim did not begin treating the claimant until 12 years after her date last insured, December 31, 2005 (lapsed). Furthermore, his opinions are not consistent with the clinical examinations during the relevant period. For instance, follow-up notes on March 24, 2003 at Orthopedic Associates of the Greater Lehigh Valley, P.A. reports the claimant is "doing quite well". She had no significant back pain. She did well with physical therapy and stretching and strengthening. The clinical examination found she had full trunk flexion, extension, lateral bend and rotation to the right and left with no significant pain. The claimant reported some stiffness with prolonged standing and prolonged sitting. It was recommended that if she is in a car, she should get out every hour or two and do some stretching and walking (Exhibit 2F/6, 29). The residual functional capacity offers more to the claimant by giving the ability to alternate between sitting and standing every thirty minutes.

R. 5283–84.

Plaintiff challenges the ALJ's consideration of Dr. Kim's opinions, arguing first that, although Dr. Kim began treating Plaintiff years after the relevant period, "Dr. Kim specifically related his opinion to the relevant period." *Plaintiff's Brief*, ECF No. 11, p. 8 (citing R. 3688). Plaintiff has not persuaded the Court that this issue requires remand. A medical report that does not address a claimant's condition during the relevant period has "little, if any, relevance to whether [the claimant] was disabled during that time." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014); *see also Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 746 (3d Cir. 2009) (finding that the ALJ reasonably found that a doctor's opinion rendered nearly five years after the date last insured "lacked probative value" because it  "shed no light" on the claimant's condition during the relevant period);  *Ortega v. Comm'r of Soc. Sec.*, 232 F. App'x 194, 197 (3d Cir. 2007) (finding that the ALJ did not err by failing to credit medical evidence that showed obesity "did not develop until well after his last insured date" and his diabetes was not diagnosed—or had an onset—until after his last insured date); *Porter v. Comm'r of Soc. Sec.*, No. CV 18-03744, 2019 WL 2590994, at *4–5 (D.N.J. June 25, 2019) (finding that the ALJ did not err in assigning little weight to a physician's opinion on the basis that the opinion "'was

19

rendered more than a year after [Plaintiff's] date last insured and [it] does not indicate that it relates back' to the disability evaluation period") (citations omitted); *Alston v. Astrue*, No. 10-cv-839, 2011 WL 4737605, at *3 (W.D. Pa. Oct. 5, 2011) ("[M]edical evidence generated after the date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue.").

In the present case, it is true that in his 2019 opinion, Dr. Kim indicated that Plaintiff's diagnosis and/or symptoms and/or limitations began as early as 2000. R. 3688; *but see* R. 2828–30 (reflecting no such statement in Dr. Kim's 2017 opinion). However, Dr. Kim provides no explanation—nor is it apparent to the Court—in his 2019 opinion (or 2017 opinion) how he related that opinion (or those opinions) back more than a dozen years to a time that long predated his treating relationship with Plaintiff, which did not begin until 2012. R. 2828–30, 3685–88; *see also Troycheck v. Kijakazi*, No. CV 22-395, 2023 WL 6129581, at *1 (W.D. Pa. Sept. 18, 2023) ("Plaintiff seems to believe that Dr. Talaman-Perez's opinion covers the relevant time period *simply because she said that it does*. However, the ALJ is of course correct that this opinion was issued years after Plaintiff's date last insured, and there is no indication as to how Dr. Talaman-Perez came to her conclusions for a period seven years earlier" and that "there is little indication in the check-box form completed by Dr. Talaman-Perez how she came to her conclusions at all, much less how she related them back to a time that appears to predate her relationship with Plaintiff by a number of years.") (emphasis added); *cf. Maxwell v. Comm'r of Soc. Sec.*, No. CV 19-8687, 2020 WL 3097532, at *7 (D.N.J. June 11, 2020) ("[N]othing in the Hanna Report refers back to the relevant time period or discusses the origin of Plaintiff's impairments. Instead, the Hanna Report assesses Plaintiff's physical capabilities . . . over four years after the date last insured. . . . For these reasons, the Court finds that the Hanna Report has little probative value,

and therefore the ALJ did not err by refusing to address it.") (citations omitted). Accordingly, based on this record, Plaintiff has not persuaded this Court that the ALJ erred in discounting Dr. Kim's 2017 and 2019 opinions on the ground that they were provided years after the relevant period, *i.e.*, July 4, 2000, through December 31, 2005, and do not address Plaintiff's condition at the relevant time. *See id.*; *see also Zirnsak*, 777 F.3d at 614; *Beety-Monticelli*, 343 F. App'x at 746; *Ortega*, 232 F. App'x at 197.

Plaintiff complains that the ALJ failed to explain his reasoning that Dr. Kim's opinions were "not supportable during the relevant period." *Plaintiff's Brief*, ECF No. 11, p. 8 (quoting R. 5283) (internal quotation marks omitted). According to Plaintiff, "records from the relevant period show consistent complaints of back and abdominal pain." *Id.* (citing Exhibits 1F, 2F, 73F). Plaintiff's arguments are not well taken. As previously noted, the "supportability" factor of the applicable regulation considers that "the more relevant the objective medical evidence and supporting explanations presented *by a medical source are to support his or her medical opinion(s)* or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1) (emphasis added); *see also Robeson v. O'Malley*, No. CV 23-944, 2024 WL 2392684, at *1 n.1 (W.D. Pa. May 23, 2024) (explaining that "'supportability relates to the extent to which a medical source has articulated support for *the medical source's own opinion*, while consistency relates to *the relationship between a medical source's opinion and other evidence within the record*'") (quoting *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021)) (emphasis added). Here, as this Court has already explained, Dr. Kim offered no explanation or objective evidence to support his 2017 and 2019 opinions as relating back to Plaintiff's purported limitations years earlier during the relevant period. *See* R. 2828–30, 3685–

88. Plaintiff generally cites to more than 100 pages of exhibits—accompanied by no explanation or pinpoint citations—but none of those records are authored by Dr. Kim, who did not begin to treat Plaintiff until 2012. *See Plaintiff's Brief*, ECF No. 11, p. 8 (citing Exhibits 1F, R. 509–56; 2F, R. 557–63; 73F, R. 4431–50). Those records are therefore irrelevant to Plaintiff's supportability argument as it relates to Dr. Kim's 2017 and 2019 opinions. *See* 20 C.F.R. § 404.1520c(c)(1); *Robeson*, 2024 WL 2392684, at *1 n.1; *see also Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Accordingly, any failure on the part of the ALJ to further discuss why Dr. Kim's 2017 and 2019 opinions were "not supportable during the relevant period" of May 12, 2017, and December 31, 2005, does not require remand. *Cf. Hale v. Kijakazi*, No. CV 22-14-E, 2023 WL 2573387, at *1 n.2 (W.D. Pa. Mar. 20, 2023) (affirming the ALJ's decision denying benefits where, *inter alia*, "[t]he ALJ only briefly addressed supportability, but that is not unexpected as NP Donikowski's opinions were rendered largely without accompanying explanations").

Plaintiff goes on to point to two records from December 2006 and July 2007 "following the relevant period [that purportedly] show" an extensive medical history with many GI symptoms and years of abdominal symptoms. *Plaintiff's Brief*, ECF No. 11, p. 8 (citing R. 636, 675). However, "'[e]vidence of an impairment which reached disabling severity after the date last insured or which was exacerbated after this date, cannot be the basis for the determination of entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before [a] plaintiff's insured status expired.'" *Sandra D. v. Comm'r of Soc. Sec.*, No. 2:21-CV-13525, 2022 WL 3681244, at *7 n.7 (D.N.J. Aug. 25, 2022) (quoting *Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *17 n.7 (D.N.J. June 30, 2022)). Moreover, "[m]erely showing that those symptoms were related to a later disability is not enough"; Plaintiff "would still need to show that" her condition was disabling before December 31, 2005, *Kushner v. Comm'r Soc. Sec.*, 765 F. App'x 825, 829 (3d Cir. 2019), which she has not done.

Plaintiff next argues that the ALJ erred in finding that Dr. Kim's 2019 opinion is inconsistent with Plaintiff's hearing testimony regarding her ability to lift and carry, stand, and walk, insisting that Dr. Kim was asked about Plaintiff's abilities in a "competitive work situation," which is "not the same" as Plaintiff's "'guesses' about what she could do years prior from her hearing." *Plaintiff's Brief*, ECF No. 11, p. 8. Plaintiff's argument is not well taken. Plaintiff points to no authority that prohibits an ALJ from considering a claimant's own testimony when determining the persuasiveness of a medical opinion. *See id.*; *cf. L. L. Y. v. Comm'r of Soc. Sec. Admin.*, No. CV 22-1710, 2023 WL 1883348, at *4 (D.N.J. Feb. 9, 2023) (finding that the ALJ sufficiently explained why he did not find a medical opinion persuasive where the ALJ considered, *inter alia*, that the claimant's own testimony contradicted such an

23

opinion); *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218, at \*9 (M.D. Fla. Sept. 20, 2021) ("Thus, even if the ALJ had erred, the error would be harmless because the ALJ nonetheless found that the opinions were unsupported by Dr. Freudenthal's own findings and *inconsistent with Plaintiff's testimony*.") (citations omitted) (emphasis added).

Plaintiff goes on to argue that the ALJ erred when finding Dr. Kim's 2019 opinion unpersuasive because, *inter alia*, it was based on Plaintiff's subjective statements. *Plaintiff's Brief*, ECF No. 11, pp. 8–9 (citing R. 3688); *see also* R.  5283 ("Dr. Kim's [2019] opinion was based on the claimant's subjective statement because he reported that 'Ms. Y[.] indicates that her symptoms / limitations began as early as 2000' (Exhibit 62F/5).'"); R. 3688 (indicating that Plaintiff's symptoms and limitations began as early as 2000). Plaintiff contends that the fact that Dr. Kim agrees with Plaintiff's allegation does not mean that her physician based his 2019 opinion solely on Plaintiff's subjective complaints. *Plaintiff's Brief*, ECF No. 11, p. 9. Because, as the Court has already reasoned, the ALJ's finding that Dr. Kim's opinions do not relate back to the relevant time period enjoys substantial support in this record, the ALJ's statement in this regard is, at most, harmless error.

Plaintiff further disagrees with the ALJ's finding that Dr. Kim's 2019 opinion was inconsistent with an examination performed by Infanta A. Stephen, M.D., in December 2019. *Plaintiff's Brief*, ECF No. 11, p. 9. According to Plaintiff, "Dr. Stephen's findings related to his evaluation of Y[.]'s left tooth pain and left lower jaw pain do not foreclose on Y[.]'s complaints related to her abdominal impairments." *Id*. Plaintiff's argument is not well taken. The recitation of the ALJ's reasoning above belies Plaintiff's suggestion that Dr. Stephen's examination addressed only Plaintiff's tooth and jaw pain: The ALJ specifically noted that Dr. Stephen's examination revealed, *inter alia*, that Plaintiff "had good strength in all four extremities. Her

24

sensory examination of both the upper and lower extremities was intact and symmetrical. Her

gait was unremarkable. Her cardiac rhythm was regular and her lungs were clear." R. 5283–84.

To the extent that Plaintiff points to Dr. Stephen's consideration of Plaintiff's medical history

that included certain diagnoses and symptoms, such diagnoses and symptoms do not alone

establish functional limitations within the relevant period. *Cf. Kushner*, 765 F. App'x at 829;

*Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone . . . does

not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990));

*Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument

incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that

result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement

to benefits under the Act"). While Plaintiff insists that "Dr. Stephen's examination simply does

not disprove Dr. Kim's opinions[,]" *Plaintiff's Brief*, ECF No. 11, p. 9, this Court declines

Plaintiff's invitation to reweigh the evidence. *See Chandler*, 667 F.3d at 359 ("Courts are not

permitted to reweigh the evidence or impose their own factual determinations [under the

substantial evidence standard]."); *cf. Hatton*, 131 F. App'x at 880 ("When 'presented with the

not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to

resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Finally, Plaintiff complains that the ALJ found that Dr. Kim's 2017 opinion was

inconsistent with an orthopedic examination conducted in March 2003, which revealed that

Plaintiff was "doing quite well." *Plaintiff's Brief*, ECF No. 11, pp. 9–10. Plaintiff specifically

argues that the fact that Plaintiff did well with physical therapy, stretching, and straightening,

does not undermine Dr. Kim's opined limitations arising from Plaintiff's abdominal problems.

*Id*. at 9. Plaintiff's argument is not well taken. Again, the recitation of the ALJ's consideration of

Dr. Kim's 2017 opinion belies Plaintiff's characterization of the evidence and the ALJ's decision

in this regard: The ALJ expressly considered that Plaintiff's pain, ability to bend, rotate arms,

and engage in prolonged sitting and standing. *See* R. 5284 ("[F]ollow-up notes on March 24,

2003 at Orthopedic Associates of the Greater Lehigh Valley, P.A. reports the claimant is "doing

quite well". She had no significant back pain. She did well with physical therapy and stretching

and strengthening. The clinical examination found she had full trunk flexion, extension, lateral

bend and rotation to the right and left with no significant pain. The claimant reported some

stiffness with prolonged standing and prolonged sitting. It was recommended that if she is in a

car, she should get out every hour or two and do some stretching and walking (Exhibit 2F/6,

29)."). In other words, the ALJ properly considered evidence during the relevant period that

reflected Plaintiff's functional abilities.

Based on this record, the Court finds that the ALJ's consideration of Dr. Kim's 2017 and

2019 opinions enjoy substantial support in the record.

## 2.     Michael Rothkopf, M.D., and Elaine Hardy, M.S., R.N., A.P.N.

Plaintiff also challenges the ALJ's consideration of the opinions of Dr. Rothkopf and

Nurse Hardy. *Plaintiff's Brief*, ECF No. 11, p. 10. Plaintiff's arguments are not well taken.

At step four of the sequential evaluation, the ALJ found these opinions unpersuasive,

reasoning as follows:

> Michael Rothkopf, M.D. found on January 14, 2019 that the claimant is limited to
> lifting and carrying 10 pounds due to her long history of malabsorption and
> malnutrition (Exhibit 53F). The undersigned finds this opinion unpersuasive since
> the opinion was provided in 2019 and is not supportable during the relevant period.

> Elaine Hardy, NP provided a statement on May 19, 2017 that she first examined
> the claimant in 2006. Nurse Hardy determined that the claimant is limited to lifting
> and carrying up to 3 pounds. She can stand and/or walk less than 2 hours per day.
> She can sit up to 6 hours per day. She is limited in pushing and/or pulling (Exhibit
> 33F). The undersigned Administrative Law Judge finds this opinion unpersuasive

since Nurse Hardy only first examined the claimant in 2006, after the relevant period. The opinion was provided in 2017 and is not supportable during the relevant period. Nurse Hardy's opinion is not supported by the clinical examinations during the relevant period nor is it supported by the objective diagnostic testing, which was for the most part all negative during the relevant period. On September 1, 2004, she ambulated with a non-antalgic gait with erect posture. Both upper and lower extremities had full range of motion. The neurological examination indicated she had full motor strength in all major motor groups. Her sensation was intact. A bone scan on August 20, 2004 had no abnormal uptake in the lumbar spine or sacrum (Exhibit 12F/9, 13, 27). Also, as noted above the MRI of her lumbar spine in September 2004 was unremarkable (Exhibits 12F/12, 34).

Elaine Hardy, MS, APN completed a second medical source statement on February 7, 2019. Nurse Hardy determined that the claimant can stand and/or walk less than 2 hours per day. She can sit up to 2 hours per day. The claimant is limited to lifting and carrying up to 10 pounds. She can rarely do postural maneuvers. The claimant would be off task 25% or more during a workday and she would be absent 4 or more days per month (Exhibit 72F). The undersigned Administrative Law Judge finds this opinion unpersuasive since the opinion was provided in 2019 and is not supportable during the relevant period.

R. 5284. Plaintiff complains that the ALJ found these opinions "unsupportable" but that the ALJ failed to "articulate" how he considered the supportability and consistency factors of each opinion. *Plaintiff's Brief*, ECF No. 11, p. 10. Plaintiff also contends that Nurse Hardy "specifically related her [2019] opinion to the relevant period, R. 4430, a fact the ALJ failed to consider." *Id*. Plaintiff's arguments are not well taken. As previously explained, medical evidence that does not address a claimant's condition during the relevant period has little, if any relevance to whether the claimant was disabled during that time. *Zirnsak*, 777 F.3d at 614; *Beety-Monticelli*, 343 F. App'x at 746; *Ortega*, 232 F. App'x at 197. Here, like Dr. Kim, Dr. Rothkopf and Nurse Hardy rendered opinions years after the relevant period. R. 2313–15, 3448–53, 4427–30. It is true that, in her 2019 opinion, Nurse Hardy indicated that Plaintiff's diagnosis and/or symptoms and/or limitations would have begun as early as 2000. R. 4430; *see also* R. 2313–15 (reflecting no such statement in Nurse Hardy's 2017 opinion). However, as with Dr. Kim, neither Nurse Hardy nor Dr. Rothkopf provided any explanation—nor is it apparent to the Court—in any

27

of those opinions how they related those opinions back to a time that predated by years their relationship with Plaintiff. R. 2313–15, 3448–53, 4427–30; *see also Troycheck*, 2023 WL 6129581, at *1; *cf. Maxwell*, 2020 WL 3097532, at *7. Accordingly, based on this record, Plaintiff has not persuaded this Court that the ALJ erred in discounting Dr. Rothkopf's opinion and Nurse Hardy's 2017 and 2019 opinions when those opinions were provided years after the relevant period, *i.e.*, July 4, 2000, through December 31, 2005, and where those opinions do not specifically address Plaintiff's condition during the relevant time. *See id.*; *see also Zirnsak*, 777 F.3d at 614; *Beety-Monticelli*, 343 F. App'x at 746; *Ortega*, 232 F. App'x at 197.

Similarly unavailing is Plaintiff's complaint that the ALJ failed to more fully discuss the factors of supportability and consistency when discounting the opinions of Dr. Rothkopf and Nurse Hardy. *Plaintiff's Brief*, ECF No. 11, p. 10. As it did with the ALJ's consideration of Dr. Kim's opinions, the Court finds no error in the ALJ's brief consideration of the supportability of the opinions of Dr. Rothkopf and Nurse Hardy, because those opinions were not accompanied by explanations. *See* 20 C.F.R. § 404.1520c(c)(1); *Robeson*, 2024 WL 2392684, at *1 n.1; *Hale*, 2023 WL 2573387, at *1 n.2. Furthermore, although the ALJ did not use the specific word "consistency," he did identify medical evidence from the relevant time period that was inconsistent with Nurse Hardy's 2017 opinion, evidence that Plaintiff does not dispute. *See* R. 5284; *Plaintiff's Brief*, ECF No. 11, p. 10; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 504 (3d Cir. 2009) ("The ALJ, of course, need not employ particular 'magic' words: '*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.'") (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). To the extent that the ALJ failed to expressly discuss the consistency of Dr. Rothkopf's opinion and Nurse Hardy's 2019 opinion, Plaintiff has not shown that such failure is anything more than, at most, harmless error where

those opinions do not relate back to the relevant period. *See Plaintiff's Brief*, ECF No. 11, p. 10;

*Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is

harmful normally falls upon the party attacking the agency's determination. . . . [T]he party

seeking reversal normally must explain why the erroneous ruling caused harm."); *Zirnsak*, 777

F.3d at 614; *Beety-Monticelli*, 343 F. App'x at 746; *Ortega*, 232 F. App'x at 197; *Rutherford v.

Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because

it would not affect the outcome of the case").

At bottom, for all these reasons, the ALJ's consideration of the opinions of Dr. Kim,

Nurse Hardy, and Dr. Rothkopf enjoys substantial support in the record.

### B.    Third Party Statements

Plaintiff also contends that the ALJ failed to consider the "credibility" of lay witnesses,

*i.e.,* Plaintiff's husband and mother, thus warranting remand. *Plaintiff's Brief*, ECF No. 11, pp.

10–11. The Court disagrees. As previously noted, Plaintiff filed her claim after March 27, 2017.

The applicable regulation provides that the state agency is "not required to articulate how [it]

considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d); *see also S.A. v.

Comm'r of Soc. Sec.*, No. CV 23-465, 2023 WL 8447921, at *3 (D.N.J. Dec. 6, 2023) ("The ALJ

was not required to articulate how he considered the evidence offered by Plaintiff's mother.")

(citing 20 C.F.R. § 404.1520c(d)). Plaintiff has not provided evidence—nor has she even

argued—that her husband or mother were medical sources. *See Plaintiff's Brief*, ECF No. 11, pp.

10–11; *see also* 20 C.F.R. § 404.1502(d) (providing that a "medical source" is "an individual

who is licensed as a healthcare worker by a State and working within the scope of practice

permitted under State or Federal law"), (e)(4) (providing that a nonmedical source is "a source

that is not a medical source[,]" including, *inter alios*, "[f]amily members"). Accordingly, the

applicable regulation did not require the ALJ to discuss these statements; therefore, the ALJ did not commit reversible error by failing to do so. *See id*.[6]

### C.    Step Three

Finally, Plaintiff complains that substantial evidence does not support the ALJ's discussion at step three of the sequential evaluation because the ALJ "failed to provide more than a conclusory statement regarding whether or not she [sic] considered the combination of all of" Plaintiff's impairments. *Plaintiff's Brief*, ECF No. 11, p. 12.[7] Plaintiff also asserts that the ALJ's error in this regard was not harmless "considering the evidence showing that her impairments impacted one another." *Id*. (contending that Dr. Kim opined that emotional factors contributed to Plaintiff's symptoms and limitations and that insomnia affected her physical condition, R. 3685, and that Nurse Hardy opined that Plaintiff's "medical issues cause her to feel depressed and anxious[,]" R. 4427) (internal quotation marks omitted). Plaintiff's arguments are not well taken.

At step three, the ALJ specifically found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." R. 5275; *see also* R. 5275–77 (discussing Listings 1.15, 5.06, 5.08); *Gainey v. Astrue*, No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) ("[W]here the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so.") (quoting *Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189

---

[6] Moreover, Plaintiff generally points to the statements of her husband and mother, but never identifies the particular excerpts upon which she relies, nor does she otherwise explain what these statements reveal or how they support a finding of disability. *See id.*; *see also Plaintiff's Brief*, ECF No. 11, pp. 10–11. As previously noted, Plaintiff has the duty to point the Court to the relevant evidence and explain why it supports her arguments. *See Atkins*, 810 F. App'x at 129; *Claxton*, 766 F.3d at 307; *Padgett*, 2018 WL 1399307, at *2.

[7] Plaintiff mistakenly notes that the ALJ discussed Listings 1.02, 1.04, and 12.06. *Id*. However, the ALJ actually discussed Listings 1.15, 5.06, and 5.08 at step three. R. 5275–77.

(3rd Cir. 2008)). However, even if the ALJ erred in failing to more fully discuss how he considered the combination of Plaintiff's impairments, any such error is harmless based on the record in this case. As a preliminary matter, although Plaintiff argues that Dr. Kim opined in his 2019 opinion that emotional factors contributed to Plaintiff's symptoms and functional limits, Dr. Kim did not so opine. Instead, he simply wrote the word "insomnia" when asked to identify any psychological conditions affecting Plaintiff's physical condition and he did not circle any of the listed psychological conditions. R. 3685. In any event, this Court has already explained why the opinions of Dr. Kim and Nurse Hardy, rendered years after the relevant period, did not relate back to Plaintiff's condition during that relevant time. Finally, Plaintiff, who bears the burden of proof at step three, offers no substantive analysis of the evidence relative to any listing; she simply has not explained how she meets or medically equals any listed impairment. *See Plaintiff's Brief*, ECF No. 11, p. 12. The Court therefore finds no merit in Plaintiff's undeveloped argument in this regard. *See Shinseki*, 556 U.S. at 409–10; *Cf. Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted); *Padgett*, 2018 WL 1399307, at *2.

Accordingly, based on the present record, the Court concludes that any error in failing to more fully discuss how the ALJ considered Plaintiff's impairments in combination does not require remand and that substantial evidence supports the ALJ's finding at step three that Plaintiff's impairments do not meet or medically equal a listed impairment.

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

Date:  September 3, 2024                    *s/Norah McCann King*
                                           NORAH McCANN KING
                                           UNITED STATES MAGISTRATE JUDGE